**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                           PLAINTIFF

v.                                          No. 4:08CR00350 JLH

DANNY JOE DILLARD                                                                                       DEFENDANT

**OPINION AND ORDER**

Danny Joe Dillard is charged with four counts of wire fraud and one count of making false statements in violation of 18 U.S.C. §§1343 and 1035, respectively. On October 29, 2009, Dillard filed a motion to dismiss Count V of his indictment on the ground that it does not state a crime. Dillard also filed a motion to suppress a written statement that he gave on October 27, 2007. On November 3, 2009, the Court held an evidentiary hearing on the motions. For the following reasons, the motion to suppress is denied, and the motion to dismiss is granted.

**I.**

Dillard was the beneficiary of a United States Railroad Retirement Board occupational disability annuity authorized by the Railroad Retirement Act, 45 U.S.C. § 231a(a)(1).[1] Each month Dillard received a payment from the Board for a disability that prevented him from performing his regular railroad occupation. According to the indictment, Dillard concealed evidence of his outside employment and his self-employment in order to remain eligible for the annuity, and this concealment resulted in Dillard's fraudulent receipt of more than $190,000 in annuity payments from 1998 to 2006. The indictment lists four specific wire transfers of annuity benefits to Dillard's bank

---

[1] This provision is analogous to the disability provisions of the Social Security Act, 42 U.S.C. § 301 et seq., and the Board's disability regulations are "substantively identical to the social security regulations." *Fountain v. R.R. Ret. Bd.*, 88 F.3d 528, 530 (8th Cir. 1996).

account during the period from August 1998 to May 2006. These transfers are alleged violations of 18 U.S.C. § 1343. The indictment also alleges that Dillard violated 18 U.S.C. § 1035 by concealing his self-employment and outside employment in order to remain eligible for annuity benefits.

On October 27, 2007, Dillard agreed to meet with agents of the Railroad Retirement Board regarding his annuity benefits. Two agents were present at the meeting, as well as Dillard's parents. At the end of the meeting, one of the agents wrote a three-page written statement for Dillard to sign, which he did. He made at least two separate corrections before signing it in six separate places. Dillard wrote in his own hand at the end of the statement that he had read his statement, that it was true and correct, and that no promises had been made to him. The interview was not tape-recorded, and Dillard was not *Mirandized*.

## II.

Dillard contends that his written statement should be suppressed as it was taken in violation of his constitutional rights. Dillard urges the Court to consider his motion to suppress even though it was filed well after the deadline set by this Court. Under Federal Rule of Criminal Procedure 12(e), "[a] party waives any Rule 12(b)(3) defense . . . not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides." *See also United States v. Trobee*, 551 F.3d 835, 838 (8th Cir. 2009) (noting that, when a party fails to file a pretrial motion before the deadline, the party waives that issue). Upon a showing of "good cause," the district court "may grant relief from the waiver." FED. R. CRIM. P. 12(e). In the pretrial discovery order, this Court set October 26, 2009, as the deadline for all pretrial motions. Although Dillard admits that his motion filed on October 29 is untimely, Dillard says that his newly appointed counsel did not acquire the written statement at issue until October 28, 2009. In light of the fact that Dillard acquired new counsel on October 1,

2009, the Court finds that it is in the interest of justice to address Dillard's motion to suppress, even though it is untimely.

Dillard argues that his written statement was given involuntarily. "[W]hen a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered." *Lego v. Twomey*, 404 U.S. 477, 489, 92 S. Ct. 619, 626-27, L. Ed. 2d 618 (1972). The Government must prove by a preponderance of the evidence that the statement was voluntary. *Id.*

Dillard argues that the Government cannot meet its burden of proof because the Government failed to record the conversation with Dillard at the time he signed the statement. It is true that the Government's burden is much easier to satisfy when the events leading up to the statement were recorded. However, failing to record does not mean that the Government cannot meet its burden. *See United States v. Liu*, Criminal No. 08-15, 2008 WL 1994977, at *16 (D. Minn. Apr. 7, 2008) (declining to upset the law regarding the recording of statements in federal cases). The Eighth Circuit has recognized that, "in federal criminal cases, other circuits have held that incriminating statements are not inadmissible simply because the police failed to record or take notes of the conversations." *Jenner v. Smith*, 982 F.2d 329, 331 n.2 (8th Cir. 1993) (citing *United States v. Short*, 947 F.2d 1445, 1451 (10th Cir. 1991), *cert. denied*, 503 U.S. 989, 112 S. Ct. 1680, 118 L. Ed. 2d 397 (1992)); *see also United States v. Valdez*, 880 F.2d 1230, 1233 (11th Cir. 1989) (finding inculpatory statements admissible although officers failed to take notes or record statements); *United States v. Coades*, 549 F.2d 1303, 1305 (9th Cir. 1977) (holding that FBI agent may testify regarding defendant's statement even though the agent did not electronically record the statement). While such a factor may be considered in the totality of circumstances to determine voluntariness, the federal

courts have not adopted a rule suppressing all statements that are not recorded. *See United States v. Cisneros-Gutierrez*, No. 07-00280-CR-W-HFS, 2008 WL 2483271, at *19 (W.D. Mo. Jun. 17, 2008) (refusing to adopt such a rule for statements obtained by custodial interrogations).

Dillard also says that the Government failed to properly *Mirandize* him in violation of his Fifth Amendment rights.[2] *Miranda* warnings are not required unless the defendant is in custody at the time of the interrogation. Custodial interrogation requiring *Miranda* warnings occurs when "there is a 'formal arrest or restrain on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520, 77 L. Ed. 2d 1275 (1983) (citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714, 50 L. Ed. 2d 714 (1977)). In *United States v. Griffin*, the Eighth Circuit listed six "common indicia of custody" that "have been influential in [that] court's assessment of the totality of the circumstances surrounding an official interrogation."[3] 922 F.2d 1343, 1349 (8th Cir. 1990). Dillard was not in custody at the time he gave the written statement, so *Miranda* warnings were not required.

Dillard contends that the written statement was made involuntarily because it was based on assurances that the two agents made to him at the time he wrote it. According to Dillard, the agents said that "there is no debtor's prison," that "no one has ever gone to prison for this," that "probably nothing would come of this," and that they would put in a "good word" for Dillard. At the time he

---

[2] Dillard only mentions in his brief that "[h]e was not *Mirandized*," but this Court finds it proper to address any Fifth Amendment issue to the extent that it has been raised.

[3] The factors include: (1) whether the suspect was informed at the time of questioning that he was not under arrest; (2) whether the suspect possessed unrestrained freedom of movement; (3) whether the suspect initiated contact with authorities or acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were used; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning. *Griffin*, 922 F.2d at 1349.

gave the statement, Dillard was in his parents' home, with his parents, meeting with Railroad Retirement Board agents who were visiting by appointment. The agents told Dillard that he was not in custody. They also told him that the conversation was voluntary and that they would terminate the conversation and leave if he asked them to do so. They interviewed Dillard at the dining table in his parents' home for some time period–estimates varied from one to two hours–before preparing a written statement. The two agents and Dillard sat at the table while Dillard's parents sat on a nearby couch while the interview was conducted. When the interview concluded, one of the agents wrote a three-page statement for Dillard to sign. According to the agent, the statement was his effort to summarize what Dillard had said during the interview. The agent asked Dillard to read and sign the statement. Dillard read the statement and made at least two separate corrections. Finally, the agent asked Dillard to write in his own handwriting at the bottom of the last page that he had read the statement, that it was true and correct, and that no promises had been made to him, which Dillard did.

Dillard contends that, in addition to the agents' assurance, his emotional state at the time that he signed the statement rendered it involuntary. Dillard testified that he was emotional during the interview because the discussion implicated his divorce, which involved not only the termination of his marriage, but also a separation from his children.

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Hyles*, 479 F.3d 958, 966 (8th Cir. 2007) (quoting *United States v. Judon*, 472 F.3d 575, 581 (8th Cir. 2007)). To determine if a statement or confession is voluntary, a court looks at "the totality of the circumstances, examining the tactics used by the police, the

details of the interrogation, and any characteristics of the accused that might cause his will easily to be overborne." *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir. 1987), *cert. denied*, 482 U.S. 909, 107 S. Ct. 2490, 96 L. Ed. 2d 381 (1987).  Although a promise made by law enforcement is "a relevant consideration" in assessing police conduct, "it is only one circumstance to be considered and does not render a confession involuntary per se." *Simmons v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir. 2001).  "Numerous cases have held that questioning tactics such as a raised voice, deception, or a sympathetic attitude on the part of the interrogator will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne." *Jenner*, 982 F.2d at 334 (citing *Miller v. Fenton*, 796 F.2d 598, 607 (3d Cir.), *cert. denied*, 479 U.S. 989, 107 S. Ct. 585, 93 L. Ed. 2d 587 (1986); *Martin v. Wainwright*, 770 F.2d 918, 925-27 (11th Cir. 1985)).  Promises of leniency do not necessarily render a confession involuntary. *See United States v. Santos-Garcia*, 313 F.3d 1073, 1079 (8th Cir. 2002).

Based on the totality of the circumstances, Dillard's written statement was voluntarily given. Dillard's will was not overborne.  There was no coercion or intimidation.  Although Dillard apparently expected a result other than a felony indictment, he concedes that no promises were made to him.  By his own testimony, the agents' assurances were in terms of what "probably" or "most likely" would happen.  There is no evidence that the agents told Dillard anything other than what they believed to be true.  The Government has met its burden of proving that the statement was voluntary.  Thus, Dillard's written statement made on October 27, 2007, will not be suppressed.

### III.

Dillard also has moved the Court to dismiss Count V of his indictment under Federal Rule of Criminal Procedure 12(b) because it does not state an offense.  Pursuant to the rule, "at any time

while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." FED. R. CRIM. P. 12(b)(3)(B). The Eighth Circuit has said that, "[i]n order to be valid, an indictment must allege that the defendant performed acts which, if proven, constitute the violation of law for which he is charged. If the acts alleged in the indictment do not constitute a violation of law, the indictment is properly dismissed." *United States v. Polychron*, 841 F.2d 833, 834 (8th Cir. 1988), *cert. denied*, 488 U.S. 851, 109 S. Ct. 135, 102 L. Ed. 2d 107 (1988); *see also United States v. Adkinson*, 135 F.3d 1363, 1372 n.23 (11th Cir. 1998); *United States v. Senogles*, 570 F. Supp. 2d 1134, 1143 (D. Minn. 2003); *United States v. Clark*, 123 F. Supp. 2d 314, 317 (D.V.I. 2000); 9 FED. PROC., L. ED. § 22:846 (2009) ("The indictment or information must allege . . . the circumstances under which the alleged crime was committed and the essential factual allegations in support thereof, which actions, if proven, constitute a violation of the law . . . ."). "An indictment should be tested against the law as we find it on the date of [the court's] decision." *Adkinson*, 135 F.3d at 1372 n.23 (internal citations omitted).

Count V of Dillard's indictment states:

> The Grand Jury re-alleges each allegation contained in the wire-fraud as described in Counts I through IV and incorporates them in Count V as if fully set forth herein.
>
> From on or about August 1998 through on or about May 2006 in the Eastern District of Arkansas DANNY JOE DILLARD, in a matter involving a health care benefit program, the United States Railroad Retirement Board program for providing occupational disability benefits, did knowingly and willfully falsify, conceal, and cover up by scheme and device a material fact in connection with the delivery and payment of such health care benefits and services. DANNY JOE DILLARD did intentionally conceal his self-employment and earnings therefrom.
>
> Such conduct by DANNY JOE DILLARD was all in violation of Title 18, United States Code, §1035.

Dillard argues that Count V fails to state an offense under 18 U.S.C. § 1035 because the United States Railroad Retirement Board program for disability benefits is not a "health care benefit program" as defined by the statute. Thus, according to Dillard, even if the Government proves that he lied in connection with those disability benefits, such behavior would not constitute a violation of the statute.

"Applying 'settled principles of statutory construction,' 'we must first determine whether the statutory text is plain and unambiguous,' and '[i]f it is, we must apply the statute according to its terms.'" *Corley v. United States*, 129 S. Ct. 1558, 1572, 173 L. Ed. 2d 443 (2009) (quoting *Carcieri v. Salazar*, 129 S. Ct. 1058, 1063, 172 L. Ed. 2d 791 (2009)). According to the statute under which Dillard was indicted:

> (a) Whoever, in any matter involving a health care benefit program, knowingly and willfully–
>
> > (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; or
>
> > (2) makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 1035(a). A "health care benefit program" is:

> Any public or private plan or contract, affecting commerce, under which any medical benefit, item or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

*Id.* §§ 1035(b), 24(b). Courts have interpreted "health care benefit program" to include health insurance programs such as Medicare and Medicaid. *See, e.g.*, *United States v. McGovern*, 329 F.3d

247, 248 (1st Cir. 2003). However, these programs are distinct from disability benefit programs, which compensate employees for their inability to work. *See Nichols v. S.D. Warren/Sappi*, 928 A.2d 732, 735 (Me. 2007) ("Generally, disability insurance protects against the 'inability of an individual to earn the salary or wages to which he or she was accustomed' due to poor health.") (internal citations omitted).

The Government cites *United States v. Lucien*, 347 F.3d 45 (2d Cir. 2003), to suggest that a broad reading of "medical benefit, item, or service" is appropriate. That case involved New York's No-Fault Act, which compensates victims of automobile accidents for "medical treatment, lost earnings, and other reasonable expenses" by requiring each driver to carry a certain level of liability insurance. *Id.* at 49. The Second Circuit found that the compensation program under the No-Fault Act "fell squarely within the unambiguous terms" of a health care benefit program because the defendants received a "medical benefit" as a result of their insurance contracts. *Id.* at 52. New York's No-Fault Act differs substantially from the disability program at issue in this case, which compensates employees for lost wages rather than medical expenses.

According to Count V of the indictment, the program involved is "the United States Railroad Retirement Board program for providing occupational disability benefits." Counts I through IV, which are incorporated by reference in Count V, allege that Dillard concealed outside income in order to remain eligible for "a United States Railroad Retirement Board occupational disability annuity."[4] As alleged in the indictment, the program provided an annuity to replace wages lost due to disability–not to provide medical benefits, items, or services. If Dillard committed fraud in

---

[4] The Government does not allege in the indictment that Dillard applied for Medicare as a qualified railroad retirement beneficiary, 45 U.S.C. § 231f(d)(2)(ii), nor does it assert that Dillard sought any benefit other than a disability annuity.

connection with that program, his conduct did not violate 18 U.S.C. § 1035.  Therefore, the motion to dismiss Count V of the indictment is granted.

## CONCLUSION

For the reasons stated above, Dillard's motion to suppress is DENIED.  Dillard's motion to dismiss Count V is GRANTED.

IT IS SO ORDERED this 4th day of November, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE